UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SADE COKER,**<br><br>                    Plaintiff,<br><br>v.<br><br>**GOLDBERG & ASSOCIATES P.C.**, and<br>**JULIE GOLDBERG,** an individual,<br><br>                    Defendants. | Case No. 1:21-cv-1803-JLR |

**PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS**

**COMES NOW** the Plaintiff, by and through their undersigned counsel, and provides this Statement of Undisputed Material Facts in support of her Motion for Summary Judgment, pursuant to FRCP 56 and LR 56.1.

**A. PARTIES / CAST OF CHARACTERS; GENERAL BACKGROUND**

1. **Defendant Julie Goldberg is an attorney licensed in the state of California.**

    **Source:**

    - Ex. 1, Def. Dep.28:1-3
    - Dkt. 1, 36, Complaint and Answer, at ¶ 14.

2. **Defendant Goldberg & Associates, P.C. was a California corporation, then later (after Plaintiff's employment with Defendants) became a Michigan corporation.**

    **Source:**

    - Ex. 1, Def. Dep.12:6-9, 26:2-9

3. **Defendant Goldberg & Associates, P.C. started its operations in California, and subsequently opened offices in New York, Michigan, and Africa.**

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

**Source:**

- Ex. 1, Def. Dep.29:19-30:2

4. **At applicable times Defendant Goldberg & Associates, P.C. had gross revenues in excess of $500,000 per year.**

   **Source:**

   - Ex. 11, Defendants' Supplemental Responses To Plaintiff's Interrogatories, at p. 8 ("Gross revenues did exceed $500,000.")

5. **Defendant Julie Goldberg is the founder and sole owner of Goldberg & Associates P.C.**

   **Source:**

   - Ex. 10, Defendants' Responses to Plaintiff's Interrogatory No. 3.
   - Ex. 1, Def. Dep.11:14-25
   - Dkt. 1, 36, Complaint and Answer, at ¶ ¶ 16-17

6. **Plaintiff Folashade ("Sade") Coker worked for Defendants' law firm and Ms. Goldberg for several weeks in the fall of 2020. Specifically, Plaintiff worked for Defendants from September 25, 2020 through October 30, 2020.**

   **Source:**

   - Ex. 3, Offer Letter
   - Ex. 4, Separation Letter
   - Ex. 7, Time Sheets

7. **Plaintiff's title, as stated on her offer letter, was "Executive Assistant / Personal Assistant."**

   **Source:**

   - Ex. 3, Offer Letter

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

*Coker v. Goldberg & Associates*
Case No. 1:21-cv-1803-JLR (SDNY)

P's Statement of Facts
Page 2

8. **Defendants paid Plaintiff on a salary basis at a rate of $85,000.00 per year.**

   **Source:**

   - Ex. 3, Offer Letter

   - Ex. 9, Paystubs, at JLF0003 (Plaintiff worked during three bimonthly pay periods; the middle one was the only one she worked the entirety of the pay period duration; $3541.67 x 24 half-months = $85,000.08).

9. **Defendants paid Plaintiff on a bimonthly (i.e. twice a month) basis.**

   **Source:**

   - Ex. 9, Paystubs

10. **At no time did Defendants pay Plaintiff anything extra for overtime pay.**

    **Source:**

    - Ex. 9, Paystubs

B. **PLAINTIFF'S DUTIES** (Administrative Exemption Does Not Apply)

11. **While working for Defendants, Plaintiff performed a variety of tasks including transcribing voice files texted to her by Defendant; making copies, sending faxes, and putting together documents for Defendant's court appearances; assembling documents for clemency packages; picking up office supplies; booking hair and nail salon appointments for Defendant; arranging travel; and running errands.**

    **Source:**

    - Ex. 2, Pl. Dep. 40:9-41:23; 70:11-72:24

    Q.   *Explain to me your daily duties; what were you doing while you were working?*

    A.   *There was never anything set in stone. I would have to come in and whatever it was that Julie threw at me that day is what I would do. On some days I would come in and -- if I went to the Bronx office, I would come in and do some office work, like, typing -- she would do something where she would send me voice mails on WhatsApp, which was her main form of communication with her entire office. She would send voice mails of cases. I would have to listen to the voice recordings, transcribe what she was saying, and enter it into the virtual system for the case file with any of the case numbers and details. I would do those things. copy, fax and any type of documentation for certain cases that she was prepping to go to court*

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

*Coker v. Goldberg & Associates*
Case No. 1:21-cv-1803-JLR (SDNY)

Ps MSJ Brief
Page 3

>   *for. I also had worked on two big clemency packages for two cases. I don't remember the names. There were some of the things I was tasked with, as far as the office goes.*
>
>   *As far as personal things go, she would ask me to book a hair appointment, nail appointment, book her flight. Help her do something for her mother-in-law. Go down to the county tax office and clear up a dispute for her period I ran errands for her in that sense. If there were any office supplies that I needed to pick up, I would go pick them up from the Staples that was up the block. That's really, for the most part, that's what it was.*

…

Q.   *You said you did a lot of personal work for Julie, too?*

A    *Correct.*

Q.   *Can you explain what that was a little better?*

A.   *Again, setting something up for her mother-in-law. Her mother-in-law received, I believe, Social Security. They were threatening to cut the Social Security off because Julie refused to do something or another. I took over that project. It was me constantly sending in documentation, calling into the Social Security office, speaking to the person there. That was one thing.*

>   *Another thing was -- one of her previous employees who had left before I started, apparently, stole money from Julie, money that was supposed to be used to pay for Julie's property taxes. Now, there was a dispute. A lean on her property or something like that period now I had to go down to the county tax office in the Bronx, explain the situation to them, and see if they could waive it or give some type of payment plan, something like that. I had to do that for her.*
>
>   *Again, setting up personal hair appointments, nail appointments, spa appointments for her. I did that. Running to the store to get her lunch period that's all I could think of from the top of my head at the moment.*

Q.   *The Clemency package that you talked about, what work was involved in that, and producing a clemency package?*

A.   *Apparently -- gosh, I don't remember, if I'm being honest. I know it was a massive package. The two clemency packages that I worked on both comprised of, I would say anywhere between two to 300 pages. We would also have to provide additional documentation.*

>   *Each page-- one page would say here is proof of this person being at this place. If that proof was on a CD, I would have click the CD for that paper. The next page, these are documents outlining he was here. I would have to click each of those documents. The documents could be one page to 80 pages. That could run from one page to 80 pages. That's just an estimate. The following page would be something else.*

AndersonDodson, P.C.
11 Broadway
Suite 615
New York, NY  10004
212.961.7639
www.andersondodson.com

*Coker v. Goldberg & Associates*
Case No. 1:21-cv-1803-JLR (SDNY)

Ps MSJ Brief
Page 4

> *Basically, I guess, a clemency package is an outline of things that a person has done in their life and you are proving they are a good person, so, we could ask for clemency on their behalf, and show that proof; Whether it's documents, C's, pictures, whatever that is.*

12. **Following are examples of instructions Defendant sent to Plaintiff via WhatsApp in text:**

    - *[9/28/20, 8:13:03 AM] You are coming to the accounting office today not the main office." JLF078*
    - *[10/1/20, 6:22:42 AM] Going forward if we can have weekly calendar meeting and than the night before text me my appointments for the following day and make sure the office has brought me all the files" JLF080*
    - *[10/1/20, 4:41:45 PM] : Some where in the house is Megan medical records need them scanned ASAP" JLF082*
    - *[10/1/20, 7:18:32 PM] : Did you leave yet ?? If not I need to put some clothes aside for us to be able to pick up and bring to me in the hospital" JLF083*
    - *[10/1/20, 7:34:16 PM] : Any chance target let you order stuff online so you could pick it out and I can send to be able to go pick it up we're up in Norwalk Connecticut DER and I'm in a dress and it's freezing." JLF083*
    - *[10/3/20, 9:59:04 PM] : So I'm really confused because we discussed this on Thursday and you had agreed that you were working Sunday. Also again today when I told you we call it quits for today I told you I would see you tomorrow" JLF086*
    - *[10/5/20, 8:29:33 AM] : Things to complete: 1. Print flow chart in color (fix printer) 2. Pile of stuff 3. Carpet 4. Printers" JLF087*
    - *[10/5/20, 6:54:03 PM] : Two thing 1. Tabs 2. Food yum Thai 2 red curry 1 green curry 2 pai thai 2 curry puff 2 Thai dumplings 2 papaya salad" JLF089*
    - *[10/7/20, 4:48:47 PM] : Can you send Someonw to get me milk from garden gourmet" JLF090*
    - *[10/10/20, 12:03:47 PM] : I'm forwarding you a bunch of voice text right now then I'm gonna need to put in Client IDs when you come in" JLF091*
    *[10/14/20, 1:46:58 PM] Can you finish the ext lost and make me a birthday list off all the staff Then after that please try to get that file finished" JLF098*
    - *[10/15/20, 2:36:15 AM] Need apt with In Los Angeles Defendants' JLF099 1. Monday computer design 2. -Sunday night -hair extensions 3. Monday (also need hair from her) she need legal apt 4. ye ast lady Monday night )have her come to me 5. Sisters nails Tuesday lunch 6. Contractor" JLF098-099*
    - *[10/16/20, 12:02:35 PM] : I need to have someone color my hair I'll explain when I get there I'll be there in about 20 minutes" JLF100*
    - *[10/17/20, 12:54:36 AM] : So I now have a huge issue because you made an appointment at noon and at 12:30 with and you didn't put them in my calendar and now everybody's booked at my calendar and I was pretty clear when I said that needed a two hour appointment from 12:30 to 2:30 and now it's not even possible*

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

*Coker v. Goldberg & Associates*
Case No. 1:21-cv-1803-JLR (SDNY)

Ps MSJ Brief
Page 5

> *because of the fact that they've looked at my calendar you can't make appointments for me and not put them in my calendar immediately" JLF102*

- *[10/28/20, 3:14:40 PM] : Need a building appraiser and inspector ASAP [10/28/20, 3:14:44 PM] : Please find one"JLF105*

**Source:**

- Ex. 5, WhatsApp messages
- Ex. 1, Def. Dep. 70:23, 71:17, 101:6-19, 124:5-10 (use of WhatsApp generally)

**13. Following are examples of instructions Defendant sent to Plaintiff via WhatsApp in voice messages:**

- *"I'm sharing the Google doc with you, but I want to tell you I need to make sure that you don't print it with the grid lines. I don't want the grid lines, so maybe print one and send a picture and it has to have the Gray background and it needs to be centered on-on card stock, it needs to be centered on card stock."*

- *"Use white card stock, not Gray card stock, white card stock."*

- *"Is coming with something that needs to be bound. You're going to hand him the Wendy so he can run it back to me, and then you're going to take that package to Staples. Pick up the one, and drop off the new one. I need it done the same way."*

**Source:**

- Ex. 6, Audio Files (sent via WhatsApp) transcript

**14. One of Plaintiff's duties was to assist with booking travel for Defendant Goldberg:**

**Source:**

- Ex. 1, Def. Dep.116:7-17

    Q.   So what were you able to use her to do for those 30 days?

    A.   So this is part of the reason -- so I started training her on calendaring, like how to understand how to calendar. I started training her on doing the -- booking trips. Understanding like when you speak to somebody, like, you know, do they have a preferred -- you know, is there a preferred airline, is there a preferred class of service. So I started training her.

- Ex. 5, WhatsApp, e.g. JLF099

**15. One of Plaintiff's duties was to assist with scheduling and booking appointments.**

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

*Coker v. Goldberg & Associates*
Case No. 1:21-cv-1803-JLR (SDNY)

Ps MSJ Brief
Page 6

**Source:**

- Ex. 2, Pl. Dep. 40:9-41:23; 70:11-72:24
- Ex. 5, WhatsApp

16. **One of Plaintiff's duties was to order and/or pick up food for Defendant Goldberg:**

    **Source:**

    - Ex. 5, WhatsApp, e.g. JLF089, JLF090

17. **One of Plaintiff's duties was to assist with booking travel for Defendant Goldberg:**

    **Source:**

    - Ex. 1, Def. Dep.116:7-17

        *Q.    So what were you able to use her to do for those 30 days?*

        *A.    So this is part of the reason -- so I started training her on calendaring, like how to understand how to calendar. I started training her on doing the -- booking trips. Understanding like when you speak to somebody, like, you know, do they have a preferred -- you know, is there a preferred airline, is there a preferred class of service. So I started training her.*

    - Ex. 5, WhatsApp, e.g. JLF099

18. **One of Plaintiff's duties was to transcribe voice files Defendant Goldberg had dictated.**

    **Source:**

    - Ex. 2, Pl. Dep. 40:9-41:23
    - Ex. 5, WhatsApp, e.g. JLF091
    - Ex. 1, Def. Dep. 103:4-10

19. **One of Plaintiff's duties was to assist with compiling documents for clemency proceedings.**

    **Source:**

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

*Coker v. Goldberg & Associates*
Case No. 1:21-cv-1803-JLR (SDNY)

Ps MSJ Brief
Page 7

- Ex. 2, Pl. Dep. 40:9-41:23; 70:11-72:24
- Ex. 1, Def. Dep.119:5-120:18

### C. HOURS WORKED/TIME-KEEPING RECORDS

**20. Plaintiff filled out and submitted handwritten time sheets.**

**Source:**
- Ex. 7, Time Sheets
- Ex. 1, Def. Dep. 90:9-21
- Ex. 2, Pl. Dep. 44:7-20

**21. Plaintiff did not clock in and out on the UAttend software Defendants used.**

**Source:**

- Ex. 1, Def. Dep. 90:9-21
- Ex. 2, Pl. Dep. 44:7-20

**22. For the period between October 5-15, 2020, Plaintiff logged her work hours as follows:**

| 10/5/20 | Mon | 9:00 | 26:00 (2am) | 16 |
|---|---|---|---|---|
| 10/6/20 | Tue | 14:00 | 26:00 (2am) | 11 |
| 10/7/20 | Wed | 14:00 | 26:00 (2am) | 11 |
| 10/8/20 | Thu | 13:00 | 24:00 | 10 |
| 10/9/20 | Fri | 11:00 | 24:00 | 12 |
| 10/10/20 | Sat | 12:00 | 24:00 | 11 |
| 10/11/20 | Sun | | | |
| 10/12/20 | Mon | 12:00 | 29:00 (5am) | 16 |
| 10/13/20 | Tue | 18:00 | 26:00 (2am) | 7 |
| 10/14/20 | Wed | 13:00 | 22:00 | 8 |
| 10/15/20 | Thu | 12:00 | 23:00 | 10 |

**Source:**

- Ex. 8, summarizing information from Ex. 7, timesheets.

**23. The WhatsApp exchanges show the following time-stamped communications:**

- *[10/7/20, 2:12:09 AM] Sade Coker: What time would you like me in the office tomorrow? ….*

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

*Coker v. Goldberg & Associates*
Case No. 1:21-cv-1803-JLR (SDNY)

Ps MSJ Brief
Page 8

- *[10/9/20, 12:05:07 AM] : Hey I know it's super late but you'll be out way earlier tomorrow... So can you come in at 11 because I've got to finish the oven it's us to get it done with the court*
- *[10/9/20, 12:09:22 AM] Sade Coker: Sure*

**Source:**

- Ex. 5, Whatsapp at JLF090, JLF091.

24. **Defendant Goldberg acknowledged generally that Plaintiff had been working long hours.**

    **Source:**

    - Ex. 5, Whatsapp at JLF103: ("[10/17/20, 1:10:58 PM] Obviously all the late hours you worked will be added and go towards comp time")

25. **Although Defendants contend that the hours on Plaintiff's timesheet are incorrect, they have not provided any evidence indicating a different record or tally of hours they contend she worked instead.**

    **Source:**

    - The record, generally.

D. **JULIE GOLDBERG AS ADDITIONAL "EMPLOYER"**

26. **Defendant Julie Goldberg hired Plaintiff.**

    **Source:**

    - Ex. 3, Offer Letter (bearing Defendant's signature).
    - Ex. 1, Def. Dep. 121:22-24 (Defendant interviewed Plaintiff)

27. **Defendant Julie Goldberg fired Plaintiff.**
    **Source:**

    - Ex. 4, Separation Letter (bearing Defendant's signature).
    - Ex. 1, Def. Dep. 131:23-132:2
    - Ex. 2, Pl. Dep. 50:4-14

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

*Coker v. Goldberg & Associates*
Case No. 1:21-cv-1803-JLR (SDNY)

Ps MSJ Brief
Page 9

28. **At the start of Plaintiff's employment, Defendant Julie Goldberg personally trained Plaintiff, in person.**

    **Source:**

    - Ex. 1, Def. Dep. 123:19-124:4

29. **Defendant Julie Goldberg directed Plaintiff's day-to-day activities.**

    **Source:**

    - Ex. 5, WhatsApp
    - Ex. 6, Transcript of voice memos sent via WhatsApp

Respectfully submitted, this **26th** day of **June, 2023**.

ANDERSONDODSON, P.C.

*[signature: Penn Dodson]*

**Penn A. Dodson**
penn@andersondodson.com
11 Broadway, Suite 615
New York, NY 10004
(212) 961-7639

Attorney for Plaintiff

List of Exhibits:
1. Def. Dep.
2. Pl. Dep.
3. Offer Letter
4. Separation Letter
5. WhatsApp
6. Voice Memos Transcript
7. Timesheets
8. Spreadsheet summarizing timesheet data
9. Paystubs
10. Defendants' Responses to Plaintiff's Interrogatories
11. Defendants' Supplemental Responses to Plaintiff's Discovery Requests

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

*Coker v. Goldberg & Associates*
Case No. 1:21-cv-1803-JLR (SDNY)

Ps MSJ Brief
Page 10