UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SADE COKER,

                      Plaintiff,

-against-

GOLDBERG & ASSOCIATES P.C. and JULIE GOLDBERG, ESQ.,

                      Defendants.

Case No. 1:21-cv-01803 (JLR)

**ORDER AND OPINION**

JENNIFER L. ROCHON, United States District Judge:

Folashade "Sade" Coker ("Plaintiff") sued Goldberg & Associates P.C. ("G&A") and Julie Goldberg ("Goldberg" and, together with G&A, "Defendants") under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (the "FLSA") and the New York Labor Law, N.Y. Lab. Law § 1 *et seq.* (the "NYLL"). ECF No. 1 (the "Complaint" or "Compl."). Plaintiff now moves for summary judgment on her claim that Defendants failed to pay her overtime pay under the FLSA. ECF Nos. 88 ("Br."), 95 ("Reply"). Defendants oppose the motion. ECF No. 92 ("Opp."). As explained below, Plaintiff's motion is GRANTED.

## BACKGROUND

### I. Facts

Except where noted, the following facts are undisputed. The Court draws "all justifiable inferences" in favor of Defendants as the parties opposing summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Goldberg is an attorney licensed in California. ECF No. 92-1 ("Defs. 56.1 Stmt.") ¶ 1. She is the founder and sole owner of G&A, *id.* ¶ 5, which is "a law office that provides advice and representation in immigration matters," Opp. at 1; *see also* ECF No. 36 ("Ans.") ¶ 7 (similar description). G&A has offices in New York, California, Michigan, and Djibouti.

1

Defs. 56.1 Stmt. ¶ 3. At all applicable times, G&A's gross revenues exceeded $500,000 per year. *Id.* ¶ 4.

On September 23, 2020, Defendants offered Plaintiff a full-time position at G&A as an "Executive Assistant / Personal Assistant." ECF No. 87-3 at 1; *see* Defs. 56.1 Stmt. ¶ 26 (admitting that "Julie Goldberg hired Plaintiff"). Upon accepting the offer, Plaintiff began working for Defendants on September 25, 2020. Defs. 56.1 Stmt. ¶ 6. At the start of Plaintiff's employment, Goldberg trained Plaintiff both in person and remotely. *Id.* ¶ 28. Defendants paid Plaintiff twice a month on a salary basis at a rate of $85,000 per year. *Id.* ¶¶ 8-9. During Plaintiff's tenure, Defendants never paid Plaintiff any overtime pay. *Id.* ¶ 10.

Plaintiff states that Goldberg "directed Plaintiff's day-to-day activities." ECF No. 89 ("Pl. 56.1 Stmt.") ¶ 29. Defendants do not deny this; instead, they state: "Due to Plaintiff's misrepresentation of her skills and experience on her resume, Plaintiff required much more supervision and direction than would otherwise be required for the role Plaintiff was hired for." Defs. 56.1 Stmt. ¶ 29.

Plaintiff also states: "While working for Defendants, Plaintiff performed a variety of tasks including transcribing voice files texted to her by [Goldberg]; making copies, sending faxes, and putting together documents for [Goldberg]'s court appearances; assembling documents for clemency packages; picking up office supplies; booking hair and nail salon appointments for [Goldberg]; arranging travel; and running errands." Pl. 56.1 Stmt. ¶ 11; *see also id.* ¶¶ 12-13 (listing examples of instructions sent to Plaintiff by Goldberg via WhatsApp text and voice messages); *id.* ¶¶ 14-19 (listing additional examples of duties assigned to Plaintiff); ECF Nos. 87-5 (WhatsApp messages), 87-6 (WhatsApp audio transcripts). In response, "Defendants do not dispute that many of the tasks assigned to the Plaintiff during her short tenure were administrative in nature and tightly directed by Ms. Goldberg." Defs.

2

56.1 Stmt. ¶ 11. Defendants contend, however, that "those directions were given because the Plaintiff was being trained and lacked the skills that she had advertised on her resume." *Id.*; *see also id.* ¶ 12 ("Defendants are not disputing that some of the Plaintiff's duties were to make personal appointments for [Goldberg], but Plaintiff appeared to be unable to handle that task without supervision."); *id.* ¶¶ 14-19 (not disputing Plaintiff's descriptions of her duties; conclusorily asserting, however, that these facts are "not inconsistent with an exempt role").

Plaintiff filled out and submitted handwritten timesheets. *Id.* ¶ 20; *see* ECF No. 87-7 (photocopies of handwritten timesheets). For example, between October 1 and October 16, 2020, Plaintiff's timesheets reported her work hours as follows:

| Date | Day of Week | Start Time | End Time | Lunch | Net Hours |
|---|---|---|---|---|---|
| 10/1/20 | Thursday | 10:00 a.m. | 8:00 p.m. | 1 | 9 |
| 10/2/20 | Friday | 10:00 a.m. | 10:00 p.m. | 1 | 11 |
| 10/3/20 | Saturday | 12:00 p.m. | 7:00 p.m. | 1 | 6 |
| 10/4/20 | Sunday | N/A | N/A | 0 | 0 |
| 10/5/20 | Monday | 9:00 a.m. | 2:00 a.m. | 1 | 16 |
| 10/6/20 | Tuesday | 2:00 p.m. | 2:00 a.m. | 1 | 11 |
| 10/7/20 | Wednesday | 2:00 p.m. | 2:00 a.m. | 1 | 11 |
| 10/8/20 | Thursday | 1:00 p.m. | 12:00 a.m. | 1 | 10 |
| 10/9/20 | Friday | 11:00 a.m. | 12:00 a.m. | 1 | 12 |
| 10/10/20 | Saturday | 12:00 p.m. | 12:00 a.m. | 1 | 11 |
| 10/11/20 | Sunday | N/A | N/A | 0 | 0 |
| 10/12/20 | Monday | 12:00 p.m. | 5:00 a.m. | 1 | 16 |
| 10/13/20 | Tuesday | 6:00 p.m. | 2:00 a.m. | 1 | 7 |
| 10/14/20 | Wednesday | 1:00 p.m. | 10:00 p.m. | 1 | 8 |
| 10/15/20 | Thursday | 12:00 p.m. | 11:00 p.m. | 1 | 10 |
| 10/16/20 | Friday | 12:00 p.m. | 8:00 p.m. | 1 | 7 |

ECF No. 87-7 at 4; *see* Pl. 56.1 Stmt. ¶ 22. Defendants do not deny that the photocopies of the timesheets that Plaintiff submitted in support of her summary-judgment motion, *see generally* ECF No. 87-7, are "authentic" in the sense contemplated by Federal Rule of Evidence 901 – "that is, true copies of originals . . . , rather than fakes," *Crawford v. Tribeca Lending Corp.*, 815 F.3d 121, 126 (2d Cir. 2016) (per curiam). But Defendants "den[y] that

these hours are accurate and that they represent continuous time actually working. Testimony from witnesses who were not deposed will show that Plaintiff was not in the office during all of these times." Defs. 56.1 Stmt. ¶ 22; *see also id.* ¶ 21 ("Plaintiff also recorded hours when she was not working, which would not have happened if she used the UAttend software."); *id.* ¶ 25 ("Plaintiff's alleged work hours are disputed by the defendant, and staff who were present in the New York office of the Defendant corporation can testify to the question of fact as to when Plaintiff was working at trial."). Defendants cite to no evidence to support their assertions that Plaintiff "recorded hours when she was not working," *id.* ¶ 21, and that "Plaintiff was not in the office during all of these times," *id.* ¶ 22.

Defendants fired Plaintiff on October 30, 2020. *Id.* ¶ 6; *see id.* ¶ 27 (admitting that "Julie Goldberg fired Plaintiff").

## II. Procedural History

Plaintiff sued Defendants on March 2, 2021, asserting four claims: (1) failure to pay overtime pay under the FLSA; (2) failure to pay overtime and spread-of-hours pay under the NYLL; (3) retaliation under the FLSA; and (4) retaliation under the NYLL. Compl. ¶¶ 31-52. Defendants moved to dismiss the Complaint on July 30, 2021. ECF No. 19. The Court denied Defendants' motion. *Coker v. Goldberg & Assocs. P.C.*, No. 21-cv-01803 (ER), 2022 WL 874719, at *1 (S.D.N.Y. Mar. 24, 2022). Defendants answered the Complaint on April 21, 2022. Ans. On September 26, 2022, the case was reassigned to the undersigned. ECF No. 39.

On June 23, 2023, Plaintiff moved for summary judgment on her FLSA overtime claim. Br. In her brief, Plaintiff "voluntarily withdr[ew] her claims for 'spread of hours' pay under the New York Labor Law as well as her retaliation claims under both state and federal law." *Id.* at 15. Thus, Plaintiff's sole remaining claim is for failure to pay overtime under the

4

FLSA.  Plaintiff's motion is fully briefed.  ECF No. 87 (attorney declaration); Pl. 56.1 Stmt.; Opp.; Defs. 56.1 Stmt.; Reply.

## LEGAL STANDARD

Summary judgment is warranted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at 248.  An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  The court must view the evidence in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  But the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Id.* at 586.  "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]."  *Anderson*, 477 U.S. at 252.  "And though, at the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party, that is true only if there is a genuine dispute as to those facts.  If a [nonmoving party's] denial of [a fact] is blatantly contradicted by the record, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 140 S. Ct. 768, 779 (2020) (original brackets, quotation marks, and citation omitted).

## DISCUSSION

### I. Plaintiff is Not Subject to the FLSA's Administrative Exception

"Enacted in 1938, the FLSA requires employers to pay overtime to covered employees who work more than 40 hours in a week."  *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1138 (2018) (citing 29 U.S.C. § 207(a)).  "But the FLSA exempts many categories of

5

employees from this requirement." *Id.* (citing 29 U.S.C. § 213). "The exemption question under the FLSA is a mixed question of law and fact. The question of how the employees spent their working time is a question of fact. The question of whether their particular activities excluded them from the overtime benefits of the FLSA is a question of law." *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 511 (2d Cir. 2020) (citation omitted). An employer bears the burden of establishing that an employee is subject to an exemption. *Flood v. Just Energy Mktg. Corp.*, 904 F.3d 219, 227 (2d Cir. 2018).

One exemption applies to "any employee employed in a bona fide executive, administrative, or professional capacity . . . (as such terms are defined and delimited from time to time by regulations of the Secretary [of Labor])." *Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39, 44 (2023) (alterations in original) (quoting 29 U.S.C. § 213(a)). As the parties recognize, the central issue in this case is whether the administrative-capacity exception applied to Plaintiff. *See* Br. at 1; Opp. at 4. If so, then Plaintiff was ineligible for overtime pay under the FLSA; if not, then Plaintiff was eligible.

Department of Labor regulations defining the contours of 29 U.S.C. § 213(a) generally have the force of law. *See Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 559 (2d Cir. 2012). One such regulation provides that employees qualify as "administrative" if "(1) they are 'compensated on a salary basis,' (2) their 'primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers,' and (3) their 'primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.'" *Scott*, 954 F.3d at 511 (brackets omitted) (quoting 29 C.F.R. § 541.200(a)). "All three prongs must be met for the exemption to apply." *Pradhan v. Maleen Banquet Hall*, No. 22-cv-03533 (AMD), 2023 WL 4274322, at *2 (E.D.N.Y. June 29, 2023); *accord Dineley v. Coach, Inc.*, No. 16-

6

cv-03197 (DLC), 2017 WL 2963499, at *5 (S.D.N.Y. July 11, 2017).  Plaintiff concedes that the first element of the administrative exception (that is, that Plaintiff was compensated on a salary basis) is met here.  *See* Br. at 2.  Therefore, the Court turns to the other two prongs, which share a focus on the employee's "primary duty."

As defined by the relevant regulation, "'primary duty' means 'the principal, main, major or most important duty that the employee performs.'"  *Sydney v. Time Warner Ent.-Advance/Newhouse P'ship*, 751 F. App'x 90, 92 (2d Cir. 2018) (summary order) (quoting 29 C.F.R. § 541.700(a)).  "Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole."  29 C.F.R. § 541.700(a).  "To determine an employee's primary duty, courts consider [a] non-exhaustive list of factors."  *Sydney*, 751 F. App'x at 92.  These factors include: "the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee."  29 C.F.R. § 541.700(a).  "The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee," although "[t]ime alone . . . is not the sole test."  *Id.* § 541.700(b).

"Plaintiff fully acknowledges that *some* 'executive assistants' can be exempt from overtime."  Br. at 7; *see* 29 C.F.R. § 541.203(d).  Plaintiff argues, however, that "[t]his does not mean that *all* executive assistants are exempt, and Plaintiff's duties did not fall within the necessary parameters to meet the exemption."  Br. at 7.

Viewing the evidence in the record in the light most favorable to Defendants, the Court agrees with Plaintiff.  At the very least, Plaintiff's "primary duty [did not] include[] the

7

exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(3). Because Plaintiff prevails on the third prong of the test, the Court need not decide whether she would also prevail on the second prong – that is, whether Plaintiff's "primary duty [wa]s the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers." *Id.* § 541.200(a)(2).

"The term 'matters of significance' refers to the level of importance or consequence of the work performed." *Id.* § 541.202(a). "The phrase 'discretion and independent judgment' must be applied in the light of all the facts involved in the particular employment situation in which the question arises." *Id.* § 541.202(b). Relevant factors include, but are not limited to: "whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; [and] whether the employee has authority to waive or deviate from established policies and procedures without prior approval." *Id.* "The exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision." *Id.* § 541.202(c).

It is uncontested that "Plaintiff performed a variety of tasks including transcribing voice files texted to her by Defendant; making copies, sending faxes, and putting together documents for [Goldberg]'s court appearances; assembling documents for clemency packages; picking up office supplies; booking hair and nail salon appointments for Defendant;

8

arranging travel; and running errands." Defs. 56.1 Stmt. ¶ 11. It is also uncontested that "Goldberg directed Plaintiff's day-to-day activities," *id.* ¶ 29, including through frequent WhatsApp text and voice messages, *see id.* ¶¶ 12-13; ECF Nos. 87-5, 87-6. Further, "Defendants do not dispute that many of the tasks assigned to the Plaintiff during her short tenure were . . . *tightly directed by Ms. Goldberg*." Defs. 56.1 Stmt. ¶ 11 (emphasis added). Indeed, Defendants affirmatively submit that "Plaintiff's work was micromanaged." *Id.* at 2. Thus, the evidence clearly shows that Plaintiff's primary duty did not include "the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(3).

Defendants insist that "[t]he administrative exception applies for the position [Plaintiff] was hired for," that "Plaintiff was expected to independently handle multiple administrative tasks that she was unable to do," and that Plaintiff "was not immediately fired because [Goldberg] believed that[,] with management, Plaintiff could be trained to accomplish the tasks she was hired for." Defs. 56.1 Stmt. at 2; *see also id.* ¶ 11 ("[T]hose directions were given because the Plaintiff was being trained and lacked the skills that she had advertised on her resume."); *id.* ¶ 12 ("Many of these instructions highlight the failure of the Plaintiff to perform the job she was hired for. The Defendants are not disputing that some of the Plaintiff's duties were to make personal appointments for [Goldberg], but Plaintiff appeared to be unable to handle that task without supervision."); Opp. at 5-6 ("Plaintiff lied on her resume about her training and experience – Plaintiff claimed to have performed numerous tasks on her resume that she seemed unable to perform when employed by the Defendants, and Defendant Julie Goldberg was required to expend additional efforts attempting to train the Plaintiff when she could not perform the position she was hired for.").

These assertions, even if true, do not alter the Court's conclusion. *See Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). In light of the regulatory text, the Court rejects Defendants' contention that the proper focus is "the position [Plaintiff] was hired for" and the duties that Plaintiff was *expected* to perform, rather than "the *actual* extent of the supervision or *actual* importance of the duties" that Plaintiff performed. Opp. at 6 (emphases added); *see, e.g.*, 29 C.F.R. § 541.700(a) ("The term 'primary duty' means the principal, main, major or most important duty that the employee *performs*." (emphasis added)); *id.* ("Factors to consider when determining the primary duty of an employee include . . . *the amount of time spent performing exempt work*" (emphasis added)); *id.* § 541.700(b) ("The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee."). To be sure, "[t]ime alone . . . is not the sole test," and employees need not "spend more than 50 percent of their time performing exempt work" to qualify for the exemption. 29 C.F.R. § 541.700(b). But Defendants put forward no evidence that Plaintiff performed *any* "exempt work." *Id.* That is fatal to Defendants' argument.

Neither case that Defendants invoke is to the contrary. *See* Opp. at 6 (citing *Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529, 531-32 (2d Cir. 2009); *Ozawa v. Orsini Design Assocs.*, No. 13-cv-01282 (JPO), 2015 WL 1055902, at *4 (S.D.N.Y. Mar. 11, 2015)). The cited portions of both cases focused on whether the plaintiff satisfied the second prong of the administrative exception – that is, whether the employee's "primary duty [wa]s the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers." 29 C.F.R. § 541.200(a)(2). Here, in contrast, the Court rests its holding on the administrative exception's third prong –

that is, whether the employee's "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." *Id.* § 541.200(a)(3). Indeed, *Davis* did not even address the third prong because the Second Circuit ruled for Plaintiff on the second prong. *See* 587 F.3d at 531 n.3, 537. In so holding, the Second Circuit "assess[ed] whether [the plaintiff] performed day-to-day sales activities or more substantial advisory duties." 587 F.3d at 534. In other words, the Second Circuit examined the actual substance of the plaintiff's activities, just as the Court does here. Meanwhile, in *Ozawa*, the court ruled for the defendant on the second factor. *See* 2015 WL 1055902, at *4. But the *Ozawa* court denied the cross-motions for summary judgment on the third factor because there were disputed issues of material fact "concerning the makeup of [the plaintiff's] duties and the degree of independence [that the plaintiff] could exercise in carrying out those duties." *Id.* at *6. That holding rested on conflicting testimony about what tasks the plaintiff actually performed, not about what her expected duties may have been when she was hired. *See id.* Here, in contrast, Defendants identify no genuine dispute of material fact about the nature of the tasks that Plaintiff actually performed while in their employ.

Thus, the Court grants Plaintiff summary judgment on her claim that she is not subject to the administrative exception to the FLSA's overtime-pay requirement.

## II. Plaintiff Worked Over 40 Hours Per Week

The parties also disagree about whether Plaintiff worked over 40 hours a week, such that she became eligible for overtime pay. *Compare* Br. at 9-10, *and* Reply at 3-5, *with* Opp. at 4. The Court agrees with Plaintiff that, based on the evidence in the record, Plaintiff worked over 40 hours a week and therefore was eligible for overtime pay.

"In a[n] FLSA case, it is the employee's burden to prove that [s]he performed work for which [s]he was not properly compensated." *McGlone v. Cont. Callers, Inc.*, 49 F. Supp. 3d

364, 370 (S.D.N.Y. 2014). Under the statute, however, "it is the employer's responsibility to 'make, keep, and preserve' records of employee wages and conditions of employment." *Id.* (quoting 29 U.S.C. § 211(c)); *see Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 363 (2d Cir. 2011) ("[A]n employer's duty under the FLSA to maintain accurate records of its employees' hours is non-delegable."). Therefore, "if an employer keeps inaccurate or inadequate records, the plaintiff need only offer a reasonable estimate of his damages." *McGlone*, 49 F. Supp. 3d at 371. "Once the employee has offered his estimate, the burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence." *Id.* "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." *Id.* (citation omitted); *accord Perry v. City of New York*, 78 F.4th 502, 526-27 (2d Cir. 2023).

During her tenure at G&A, Plaintiff filled out and submitted handwritten timesheets. Defs. 56.1 Stmt. ¶ 20. Plaintiff submitted photocopies of these timesheets in support of her summary-judgment motion. ECF No. 87-7. The sheets indicate that during several of the weeks, Plaintiff worked over 40 hours. *See id.*

Defendants simply "den[y] that these hours are accurate and that they represent continuous time actually working" and state that "[t]estimony from witnesses who were not deposed will show that Plaintiff was not in the office during all of these times." Defs. 56.1 Stmt. ¶ 22. Defendants also state that "Plaintiff's alleged work hours are disputed by the defendant, and staff who were present in the New York office of the Defendant corporation can testify to the question of fact as to when Plaintiff was working at trial." *Id.* ¶ 25; *see also* Opp. at 6-7 ("Defendants have a list of witnesses, submitted to Plaintiff, who are beyond Defendants' control, who can further clarify the history of Plaintiff's employment with the

Defendants at trial, including the expectations Plaintiff was expected (but failed) to fulfil, the hours Plaintiff actually worked, the extent of supervision, and the amount of time Plaintiff spent unsupervised, including when she was playing video games on her phone during regular working hours."). Defendants cite no evidence to corroborate any of these statements.

Defendants' unsupported assertions, and claims that people will someday testify to facts, do not give rise to a genuine dispute of material fact. It is elementary that "to defeat a properly supported summary judgment motion, the opposing party must proffer admissible evidence that sets forth specific facts showing a genuinely disputed factual issue that is material under the applicable legal principles." *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008) (brackets, quotation marks, and citation omitted). Defendants have introduced no admissible evidence creating a genuine dispute about the accuracy of Plaintiff's timesheet entries, and they cannot defeat summary judgment with the promise of "[t]estimony from witnesses who were not deposed," Defs. 56.1 Stmt. ¶ 22, but who supposedly "can testify . . . at trial," *id.* ¶ 25. "Summary judgment is the put-up-or-shut-up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Util. Metal Rsch., Inc. v. Coleman*, No. 03-cv-01463 (SLT), 2008 WL 850456, at *5 (E.D.N.Y. Mar. 28, 2008) (brackets, quotation marks, and citation omitted; hyphens added). To the extent that anyone on Defendants' "list of witnesses" was "beyond Defendants' control," as Defendants claim without clarification or substantiation, Opp. at 7, they had the ample arsenal of the Federal Rules at their disposal to address such issues, *see, e.g.*, Fed. R. Civ. P. 30(a)(1) ("A party may, by oral questions, depose any person, including a party, without leave of court except as provided in Rule 30(a)(2). *The deponent's attendance may be compelled by subpoena* under

13

Rule 45." (emphasis added)). Evidently, Defendants did not avail themselves of those means, but that is not a reason to deny summary judgment.

Altogether, Defendants have offered only "conclusory statements, conjecture, [and] speculation," which "will not defeat summary judgment." *Major League Baseball*, 542 F.3d at 310 (citation omitted). The Court therefore grants summary judgment to Plaintiff on the issue of whether Plaintiff worked over 40 hours a week.

**III. Other Issues**

Plaintiff argues that she is entitled to liquidated damages, *see* Br. at 10-12, that she is entitled to a total damages award (including both unpaid overtime and liquidated damages) of $4,986.14, *see id.* at 12-13, and that the individual Defendant Goldberg qualifies as an "employer" under the FLSA, *see id.* at 14. Defendants are deemed to have conceded these arguments by failing to address them in their opposition brief. *See Curry Mgmt. Corp. v. JMorgan Chase Bank, N.A.*, 643 F. Supp. 3d 421, 426 (S.D.N.Y. 2022). Even if Defendants had not so conceded, the Court agrees with these arguments.

To begin with, Plaintiff is entitled to liquidated damages. "Under the FLSA, a district court is generally required to award a plaintiff liquidated damages equal in amount to actual damages." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008) (citing 29 U.S.C. § 216(b)). "Liquidated damages are not a penalty exacted by the law, but rather compensation to the employee occasioned by the delay in receiving wages due caused by the employer's violation of the FLSA." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999). A district court has "discretion to deny liquidated damages where the employer shows that, despite its failure to pay appropriate wages, it acted in subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate the FLSA." *Barfield*, 537 F.3d at 150 (quoting 29 U.S.C. § 260). "The employer

bears the burden of proving good faith and reasonableness, but the burden is a difficult one, with double damages being the norm and single damages the exception." *Herman*, 172 F.3d at 142.  Here, Defendants have not even attempted to "carry the heavy burden necessary to avoid liquidated damages," let alone succeeded in doing so. *Barfield*, 537 F.3d at 150.

The Court perceives no errors in Plaintiff's damages calculations.  *See* Br. at 12-13; ECF Nos. 87-7, 87-8.  The Court also holds that Goldberg – who founded and solely owned G&A, *see* Defs. 56.1 Stmt. ¶ 5, hired Plaintiff, *see id.* ¶ 26, directed Plaintiff's day-to-day activities, *see id.* ¶ 29, and fired Plaintiff, *see id.* ¶ 27 – qualified as Plaintiff's employer under the applicable economic-reality test, *see Brown v. N.Y.C. Dep't of Educ.*, 755 F.3d 154, 167 (2d Cir. 2014) ("[T]o determine employer status, we have looked to economic realities such as (1) the power to hire and fire employees, (2) the ability to supervise and control employee work schedules or terms of employment, (3) authority over the rate and method of employee payment, and (4) the maintenance of employment records.").

Plaintiff further "asks that liability for fees and costs be established, with the measure of those to be determined at a later date." Br. at 14.  Yet Plaintiff also states that this request "will be further set forth in a separate motion." *Id.* at 13.  The Court denies the request to establish Defendants' liability for fees and costs at this time, without prejudice to Plaintiff filing a separate motion for fees and costs.

One final issue remains.  On April 28, 2023, Plaintiff filed a motion for sanctions against Defendants based on the alleged nonproduction of certain evidence.  ECF No. 78.  The Court referred the motion to the magistrate judge assigned to this case for a report and recommendation.  ECF No. 79; *see also* ECF No. 97.  In a thoughtful opinion, the magistrate judge granted Plaintiff's motion in part.  *See Coker v. Goldberg & Assocs. P.C.*, No. 21-cv-01803 (JLR) (BCM), 2024 WL 263121, at *1 (S.D.N.Y. Jan. 24, 2024).  Specifically, the

magistrate judge ordered that: "(1) [D]efendants shall produce the withheld WhatsApp audio files sent to or received from [P]laintiff no later than February 7, 2024, on an attorneys'-eyes-only basis; and (2) [D]efendants are precluded from using or relying on any previously undisclosed WhatsApp communications to support their good-faith defense." *Id.* at *6. Defendants object to this order, arguing that it "requires that the Defendant Goldberg, an attorney, turn over her own clients' privileged information to the Plaintiff's attorney." ECF No. 103 at 1. Defendants do not contend, however, that they should be able to rely on those communications to support a good-faith defense. *See generally id.* Plaintiff, naturally, agrees with Magistrate Judge Moses's order. *See generally* ECF No. 105.

Because the Court grants summary judgment in Plaintiff's favor even without considering the WhatsApp files withheld by Defendants, Plaintiff's request for those files is now moot. Thus, the Court – without expressing any view on the propriety of Defendants' assertion of privilege – concludes that Defendants need not produce the WhatsApp files in question.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion for summary judgment. Judgment will therefore be entered in favor of Plaintiff against Defendants, jointly and severally, in the amount of **$4,986.14**. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 85 and close the case.

Dated: February 29, 2024
   New York, New York

SO ORDERED.

*Jennifer Rochon*
JENNIFER L. ROCHON
United States District Judge