UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SADE COKER,<br><br>Plaintiff,<br><br>v.<br><br>GOLDBERG & ASSOCIATES P.C., and<br>JULIE GOLDBERG ESQ., an individual,<br><br>Defendants. | Case No. 1:21-cv-1803-JLR-BCM |

# PLAINTIFF'S MOTION FOR ATTORNEY FEES AND COSTS

Having received summary judgment in her favor [Dkt. 106], Plaintiff Sade Coker and her counsel now seek an award of reasonable and appropriate attorney fees (of $ 53,667.00) and costs ($1,593.97), for a total of $ 55,260.97, plus interest. In support, Plaintiff is submitting the following:

1. Plaintiff's counsel's contemporaneous billing records, with activities listed chronologically, consisting of the following:

| Role | Hours | Rates |
|---|---|---|
| Partners | 76.6 | $450-$475 |
| Associate Attorney | 2.3 | $400 |
| Paralegal | 124.5 | $95-$195 |
| Client Relations Specialist | 3.0 | $95 |
| **TOTALS** | **206.4** | **$53,667.00** |

2. Plaintiff's counsel's declaration regarding qualifications and experience.

3. Legal services agreements

4. Documentation of $1,593.97 of costs/expenses, comprised of the following:
    $400    Filing Fee
    $177    Service of Process
    $970    Transcripts/Court Reporters
    $46.97 Postage & Minor Misc. Expenses

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

*Coker v. Goldberg & Associates et al*
Case No. 1:21-cv-1803-JLR-BCM

P's Motion for Attorney Fees
Page 1

## **A CANDID INTRODUCTION**

This is probably the undersigned's least favorite kind of motion to make, as it seems to necessarily involve a combination of pompous horn-tooting and Oliver Twist-esque begging, which, due to longstanding appellate level precedent, has little hope of being evaluated on a basis other than the almighty billable hour, despite its many shortcomings as a measure of value rendered to clients or the judicial system. One assumes these motions do not give the Court great delight to wade through either, so we will do our best to tick the boxes and make this as painless as possible for the both of us.

We seek the amount of $ 53,667.00 of fees plus costs of $1,593.97. Before getting into the specifics of why this is a reasonable fee as per the relevant legal standards, we hope that at first glance the Court will, from a macro perspective, agree with us that this is not a facially exorbitant number for having gone all the way through discovery and summary judgment, in a highly contested matter in which extra efforts have been necessitated by various entanglements as seen on the docket and summarized below.

This amount represents a reduction from the amounts we have logged in the firm's time records. The total hours claimed are $53,667.00 which represents 78.9 hours of attorney time, 124.5 hours of paralegal time, and 3 hours of [non-"overhead"] assistant time. Relative both to other cases at this stage of proceedings and to the needs of this case, one would be hard pressed to say that this is an unreasonably high quantity of time spent achieving this result. One might say that it is an unreasonable (or, rather, irrational) amount of time to spend on a case that has such a low dollar figure for the Plaintiff's overtime award. However, some amount of facially irrational behavior is necessary to hold some employers accountable that most other lawyers would

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

*Coker v. Goldberg & Associates et al*
Case No. 1:21-cv-1803-JLR-BCM

P's Motion for Attorney Fees
Page 2

rationally turn down for contingent representation. Even one of the *Johnson* factors implicitly gives a nod to this concept.

## ANALYSIS

The FLSA and NYLL are fee-shifting statutes that entitle the prevailing party to recover its reasonable attorneys' fees and costs. 29 U.S.C. § 216(b) ("In any action . . . in which the employee prevails, the court shall allow such employee reasonable attorney's fees . . .") (emphasis added). Plaintiffs are the prevailing party for the purposes of the FLSA and NYLL "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

### I. LEGAL STANDARDS

It is well established that attorney fees and litigation costs are a part of plaintiffs' recoveries in wage and hour actions. A court in an action under the FLSA "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b) (emphasis added). Similarly, fees are also mandatory with respect to New York Labor Law claims. § 198(1)(a) (". . .the court shall allow such employee to recover . . .all reasonable attorney's fees. . ."); see also, *Guardado v. Precision Fin., Inc.*, 2008 U.S. Dist. LEXIS 47881, 2008 WL 822105, at *2 (E.D.N.Y. 2008). The difficult question is not whether, but how much: What is a "reasonable" attorney fee?

Trial courts enjoy a great amount of discretion to determine what a "reasonable" attorney fee is. *Arbor Hill v. Cnty. of Albany*, 493 F.3d 110, 117 (2d Cir. 2007); *Jung v. Neschis*, 01 Civ. 6993, 2008 WL 2414310 at *2 (S.D.N.Y. June 13, 2008) ("Courts have wide latitude in determining what constitutes reasonable attorney's fees."). Appellate review of such an award is limited to situations in which a district court (1) based its decision on an error of law or used the

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

*Coker v. Goldberg & Associates et al*
Case No. 1:21-cv-1803-JLR-BCM

P's Motion for Attorney Fees
Page 3

wrong legal standard; (2) based its decision on a clearly erroneous factual finding; or (3) reached a conclusion that, though not necessarily the product of a legal error or a clearly erroneous factual finding, "cannot be located within the range of permissible decisions." *McDaniel v. Cnty. Of Schenectady*, 595 F.3d 411, 416 (2d Cir. 2010).

While there is much debate about calculation methods and what amounts qualify as "reasonable" attorney fees, several important themes have emerged. First, compensation to the attorneys must be adequate to incentivize quality representation of claimants. Second, the size of the attorney fee award need not be proportional to the size of the damage award. Third, the attorney fees awarded must not be "excessive." Overarching several of these is the concept that "reasonableness" goes both ways – it should neither be excessive, nor too low.

### A. The FLSA and NYLL Require Compensation to Plaintiff's Attorneys Adequate to Incentivize Quality Representation of Claimants.

Courts consistently recognize that "Private attorneys prosecuting wage and hour claims must be adequately compensated for their time and labor." *Sewell v. Bovis Lend Lease*, 2012 U.S. Dist. LEXIS 53556 (S.D.N.Y. 2012). "If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk." *Id*. citing *Prasker v. Asia Five Eight LLC*, 2010 WL 476009, at *6 (S.D.N.Y. 2010). "Attorneys who protect labor rights must be adequately compensated and such compensation furthers the remedial purposes of the FLSA and the NYLL." *Id*. After all, this judicial recognition—of the ability of FLSA claimants to recover a reasonable attorney's fee—is crucial to the statute's enforcement scheme. See, e.g., *Fegley v. Higgins*, 19 F.3d 1126, 1134-35 (6th Cir. 1994) (the "purpose of the FLSA attorney fees provision is 'to ensure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances,'" and, "an award of attorney fees here 'encourages the vindication of congressionally identified policies and rights'"); *United Slate, Local 307 v. G & M*

AndersonDodson, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

*Coker v. Goldberg & Associates et al*
Case No. 1:21-cv-1803-JLR-BCM

P's Motion for Attorney Fees
Page 4

*Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir. 1984) (FLSA attorney's fee analysis "must reflect the obvious congressional intent that the policies enunciated in FLSA Section 2 be vindicated, at least in part, through private lawsuits charging a violation of the substantive provisions of the wage act"); *Maddrix v. Dize*, 153 F.2d 274, 275-76 (4th Cir. 1946) ("Obviously Congress intended that the wronged employee should receive his full wages plus the penalty without incurring any expense for legal fees or costs."); *Estrella v. P.R. Painting Corp.*, 596 F. Supp. 2d 723, 727 (E.D.N.Y. 2009) (FLSA fee-recovery provision is "designed in part to secure legal representation for plaintiffs whose wage and hour grievances were too small, in terms of expected recovery, to create a financial incentive for qualified counsel to take such cases under conventional fee arrangements"); *Mezger v. Price CPAs, PLLC*, 2008 U.S. Dist. LEXIS 55311, *12-13 (M.D. Tenn. 2008) (same as Fegley); see also *Heder v. City of Two Rivers*, 255 F.Supp.2d 947, 952 (E.D. Wis. 2003) (FLSA's fee-recovery provision "exists to enable plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail and, thereby, to help ensure enforcement of the substantive provisions of the FLSA").

This concept, in turn, is premised upon an even more fundamental precept of the wage and hour laws: recognizing the power imbalances implicit in the employer-employee relationship (especially, though not exclusively, when it comes to low-wage workers), certain external structures and mechanisms must be imposed to offset those imbalances. See *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706-8 (1945) (recognizing imbalance of bargaining power between employers and wage-hour employees); see also *Chung v. New Silver Palace Rest.*, 272 F.Supp.2d 314, 317 (S.D.N.Y. 2003) ("the New York Labor Law reflects 'a strong legislative policy aimed at redressing the power imbalance between employer and employee.'"), quoting *Saunders v. Big Bros., Inc.*, 454 N.Y.S.2d 787, 787 (N.Y. Civ. Ct. 1982). In a statutory framework designed by

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

*Coker v. Goldberg & Associates et al*
Case No. 1:21-cv-1803-JLR-BCM

P's Motion for Attorney Fees
Page 5

AndersonDodson, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

Congress with an express recognition of an imbalance of bargaining power between employers and employees, it is paramount that those of lesser bargaining power be empowered with advocates who can function effectively across the table from advocates hired by their higher-bargaining power employers.

In other words, attorney fees awarded should tend to attract a quality of representative such that they are at least evenly matched against their employer-opponents and/or their counsel, to further the statute's enforcement scheme.

B. **The size of the attorney fee award need not be proportional to the size of the damage award.**

In FLSA cases, like other discrimination or civil rights cases, district courts have repeatedly found that the attorneys' fees need not be proportional to the damages plaintiffs recover, because the award of attorneys' fees in such cases encourages the vindication of Congressionally identified policies and rights. See, e.g., *Tucker v. City of N.Y.*, 704 F.Supp.2d 347, 359 n. 10 (S.D.N.Y.2010) ("[S]ettled case law [is] that the setting of statutory [attorneys'] fees does not require proportionality between the plaintiff's recovery and the amount of the fee award.") (citing *City of Riverside v. Rivera*, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986)); *Adorno v. Port Auth. of N.Y. & N.J.*, 685 F.Supp.2d 507, 512 (S.D.N.Y.2010) (Chin, D.J.) ("The courts have rejected a per se proportionality rule, i.e., proportionally linking the prevailing party's attorneys' fees to the degree of monetary success achieved."); *Grochowski v. Ajet Constr. Corp.*, 97 Civ. 6269, 2002 WL 465272 at *2 (S.D.N.Y. Mar. 27, 2002) ("The purpose of the FLSA attorney fees provision is 'to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances.' Courts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees ... 'encourage [s] the vindication of congressionally identified policies and rights.' "); *Baird v. Boies, Schiller & Flexner LLP*, 219

F.Supp.2d 510, 519–20 & n. 7 (S.D.N.Y.2002) ("[A] limited monetary recovery does not preclude a substantial attorneys' fee award, for there is no requirement of proportionality."). *Espino v. Unitech Design Inc.*, 783 F.Supp.2d 509 (S.D.N.Y. 2011).

The size of the attorney fee award need not be proportional to the size of the damage award: "In FLSA cases, like other discrimination or civil rights cases, the attorneys' fees need not be proportional to the damages plaintiffs recover, because the award of attorneys' fees in such cases encourages the vindication of Congressionally identified policies and rights." *Espino v. Unitech Design Inc.*, 783 F. Supp. 2d 509 (S.D.N.Y. 2011), citing *Tucker v. City of N.Y.*, 704 F. Supp. 2d 347, 359 n. 10 (S.D.N.Y. 2010); *City of Riverside v. Rivera*, 477 U.S. 561 (1986)); *Adorno v. Port Auth. of N.Y. & N.J.*, 685 F.Supp.2d 507, 512 (S.D.N.Y. 2010); *Grochowski v. Ajet Constr. Corp.*, 2002 WL 465272 at *2 (S.D.N.Y. Mar. 27, 2002); *Baird v. Boies, Schiller & Flexner LLP*, 219 F.Supp.2d 510, 519–20 & n. 7 (S.D.N.Y. 2002). Stated another way, it is acceptable for attorney fee awards to be bigger than the amounts awarded to the plaintiffs, or for them to constitute the majority of an overall damages award.

In fact, based on these principles, the Second Circuit has even upheld a $3.42 million fee award with a $3.53 million wage claim settlement, dismissing the defendants' argument that the fees were disproportionately large relative to the settlement. *Torres v. Gristede's Operating Corp* at *8, No. 12-3336-cv (2d Cir. May 22, 2013), citing *Farrar v. Hobby*, 506 U.S. 103, 114 (1992).

The Second Circuit has expressly acknowledged that a percentage-based fee award simply is not a "reasonable fee" in cases in which the damages turn out to be "low value." *Millea v. Metro-North R. Co*, 658 F.3d 154, 161 (2d Cir. 2011) (finding it unreasonable for the district court to have awarded one-third of the recovery as an attorney fee in a successful but low damages civil rights case). After all, receiving a third of a tiny damages award hardly makes for sustainable

AndersonDodson, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

Coker v. Goldberg & Associates et al
Case No. 1:21-cv-1803-JLR-BCM

P's Motion for Attorney Fees
Page 7

business practices, which would effectively screen out competent lawyers from taking such "low value" cases. Indeed, workers whose wages are low are those the FLSA seeks most to protect, and if lawyers could only take, and awarding (or approving) fees based on the absolute dollar figure their damages turn out to be actively inhibits these workers' access to justice, contrary to the spirt and jurisprudence of the FLSA.

### C. Compensation to Plaintiff's Attorneys Should Not Be "Excessive."

Courts frequently point to time that is redundant, duplicative, unwarranted, unnecessary, or otherwise superfluous (like the adjectives in this sentence). See e.g. *Days Inn Worldwide, Inc. v. Amar Hotels, Inc.*, 2008 WL 2485407, at *10 (S.D.N.Y. 2008) (reducing attorneys' fee by seventy-five percent when "a substantial amount of work performed ... was redundant and unnecessarily duplicative"). Where a judge feels that time records show excess, s/he has been authorized to "trim the fat" from fee applications either entry by entry, or as across the board percentage cuts. See e.g. *New York Ass'n For Retarded Child. v. Carey*, 711 F.2d 1136, 1145 (2d Cir. 1983). Implicitly, the plaintiff's attorney has an obligation to run the case efficiently, and not waste time, effort, or other resources.

As one example, in a default judgment attorney fee award, Judge Cogan reduced an associate attorney's hours from 111 to 75, remarking, "I cannot see more than 75 hours for a straightforward FLSA case where defendants defaulted, and even that seems generous," and noting instances of "billed time [that] is attributable to inexperience." *Cuthbert v. New Soldier's Restaurant Inc.*, 14 Civ. 5466 (BMC) (EDNY, Mar. 24, 2015) (requesting $75,023.45 in fees, judge granting $46,331.52).

In other words, an attorney fee is "excessive" when there is waste in the efforts undertaken.

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY  10004
212.961.7639
www.andersondodson.com

*Coker v. Goldberg & Associates et al*
Case No. 1:21-cv-1803-JLR-BCM

P's Motion for Attorney Fees
Page 8

## II.     APPLICATION OF THESE PRINCIPLES TO THIS CASE

### A. Work Performed On this Case

Defendants have consistently rebuffed Plaintiff's attempts to settle or streamline this straightforward single-plaintiff, low damages overtime case since November, 2020, instead opting for litigiousness.

Upon receiving preliminary information about Plaintiff and her claim, counsel directed further information to be obtained. *Decl. of Penn Dodson*. The firm's intake paralegal conducted an extensive questionnaire designed to gather additional background information about Plaintiff, the firm, its owner, the work performed, and payment details. *Id*. The firm's staff coordinated logistics, collected relevant documents from Plaintiff regarding her employment with the Defendants, and reviewed the gathered information. *Id*. After analyzing the obtained data to determine the specific claims and conducting background searches on the corporation and owners, the attorney had a comprehensive conversation with Plaintiff. She invited Plaintiff to become a client, explained the nature of the attorney-client relationship, and ensured that the signed retainer agreement and internal paperwork were in order. *Id*. The paralegals then set up electronic and paper case files. *Id.*

Prior to commencing suit, the firm issued letters to Defendants inviting settlement, itemizing potential damages and including a modest amount for attorney fees. *Id.* When there was no response to the first set of letters, a second set was issued. *Id.* Attorney Goldberg did reply to that round, but only to indicate that somebody else in her firm was supposed to be reaching out and to levy insults. *Id.*

Since that route was not proving productive, ultimately Plaintiff, through counsel, filed the Complaint in Court on March 2, 2021 [Dkt. 1]. This step involved paralegals and attorneys drafting

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY  10004
212.961.7639
www.andersondodson.com

*Coker v. Goldberg & Associates et al*
Case No. 1:21-cv-1803-JLR-BCM

P's Motion for Attorney Fees
Page 9

the Complaint, overseeing the preparation of its accompanying documents and ECF filing, and supervising the support staff team's efforts to ensure the Complaint was filed and prepared for service. *Id.*

After attempting to evade service, eventually Defendants hired attorney David Kasell of "Fair Labor Defense LLC" who entered his appearance May 6, 2021, coupled with a letter requesting a pre-motion conference in anticipation of their proposed motion to dismiss. *Id.,* Dkt. 9-10.

On May 17, 2021 Hon. Edgardo Ramos ordered the case to go to mandatory mediation. Dkt. 12. The parties complied with this order, attending mediation on July 16, 2021, but the case did not settle. Dkt. 17.

Defendants then filed their Motion to Dismiss. Dkt. 19, 20. Then they filed a letter motion asking that Plaintiff's counsel be enjoined from filing certain motions. Dkt. 21. Plaintiff's counsel filed a Rule 11 motion for sanctions regarding Defendants' motion to dismiss, after having issued a "safe harbor" letter 21 days prior, arguing that the motion to dismiss was, in essence, frivolous and was interposed only to delay proceedings. Dkt. 25, 26. Judge Ramos immediately denied this motion based on failure to file a pre-motion conference letter in advance. Dkt. 28. Counsel then filed a letter motion requesting a conference. Dkt. 30.

Meanwhile Plaintiff's counsel also filed a response to the motion to dismiss, and then Defendants replied. Dkt. 24, 29. About six months later, Judge Ramos entered an order denying Defendants' motion to dismiss. Dkt. 33. Defendants filed their Answer on April 21, 2022, more than a year after the Complaint was filed. Dkt. 36.

Shortly after a scheduling order was entered, the case was reassigned to District Judge Jennifer L Rochon. Dkt. 38, 39. Discovery commenced. Plaintiff issued interrogatories and

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

*Coker v. Goldberg & Associates et al*
Case No. 1:21-cv-1803-JLR-BCM

P's Motion for Attorney Fees
Page 10

requests for production on July 7, 2022. Letters, emails, and phone calls ensued regarding the responses. *Decl*. Defendants issued written discovery on August 9, 2023 and Plaintiff responded on September 16, 2022; Defendants did not claim any deficiencies in the responses. *Id.* Defendants deposed Plaintiff on December 6, 2022. *Id.* After several delays, Plaintiff's counsel deposed Defendant Goldberg on March 6, 2023. *Id.*

Multiple discovery disputes erupted, regarding Defendants' failures to respond to questions and produce requested documents and also regarding the scheduling of Defendants' depositions, culminating in Plaintiff's counsel asking the court for sanctions for Defendants' failures to produce requested information. See generally Dkt. 40-105. The summary of these is that Plaintiff had to ask the Court for intervention due to Defendants not cooperating with discovery requests, and Defendants filed multiple motions for various extensions of time. *Id.*

Plaintiff filed her motion for summary judgment on June 23, 2023. Dkt. 85-89. It was fully briefed by August 25, 2023. Dkt 92, 95. Judge Rochon issued an Order on March 1, 2024 granting the motion and finding Plaintiff to have been misclassified and therefore entitled to overtime pay. Dkt. 106. Including liquidated damages the overtime award was for $4,986.14. *Id*.

**B. Overview of AndersonDodson P.C's Qualifications**

As described in a Declaration attached hereto, Plaintiff's lead attorney on this matter, Penn Dodson, focuses her practice on helping employees recover the unpaid and underpaid wages to which they are entitled under the law. She is a graduate of Dartmouth College (*magna cum laude*, double major) and UC Hastings College of the Law; she has served as President of a state-wide employment lawyers' organization; and she has received accolades including an AV-rating by Martindale-Hubbell, SuperLawyer in Employment Law in Metro New York, Top Women Attorneys in New York, and a rating of 10.0 (out of 10) on Avvo.com. Bolstered by amicus curare

AndersonDodson, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

*Coker v. Goldberg & Associates et al*
Case No. 1:21-cv-1803-JLR-BCM

P's Motion for Attorney Fees
Page 11

support from the US DOL, EEOC, and seven nonprofit workers' rights organizations, she successfully challenged Second Circuit precedent and obtained a holding that to constitute protected activity under the anti-retaliation provisions of the FLSA, an oral complaint made to a supervisor, rather than only a formal filing of a complaint with a government entity, is sufficient. *Greathouse v. JHS Sec. Inc*., 784 F.3d 105 (2d Cir. 2015). She has been practicing law since 2003 (more than 20 years), almost exclusively representing employees in employment matters, and has worked in various other capacities in employment law firms and legal services organizations off and on for approximately five years before that. Clients are frequently vocally appreciative of her services, both for the results obtained and for how they are served during the process. She is supported by a capable and efficient staff, to whom she delegates tasks that do not require the skills of a lawyer. Based on these credentials, a paying client in the legal market would likely have to pay more than average to acquire this firm's services.

The firm AndersonDodson, P.C. holds itself out as "an innovative workers' rights law firm dedicated to pursuing unpaid and underpaid wages on behalf of employees." As described above, the firm seeks to handle cases not only with excellence, but also efficiency by utilizing technology and delegating to support staff in order to focus expenditures of effort, time, and other resources to maximize their impact on the outcome of the case.

### C. Results Obtained

"Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee," and that "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Riverside v. Rivera*, 477 U.S. 561, 568 (1986), quoting *Hensley*, 461 U.S. at 435. The results obtained here are "excellent" within the context of these circumstances, as Plaintiff obtained full relief of the damages claimed in her

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

*Coker v. Goldberg & Associates et al*
Case No. 1:21-cv-1803-JLR-BCM

P's Motion for Attorney Fees
Page 12

motion for summary judgment. [Compare Motion, Dkt. 86 p. 19, with Order, Dkt. 106].

### D. Time and Labor Expended

This case has required tenacity and perseverance. The amount of time, energy, and effort required by this case was considerably more than it should have been, but it was necessary in order to drive the case to this point.

Plaintiff's counsel maintains logs of activities undertaken in an online case management software. Data from those logs has been compiled and is attached to the accompanying Declaration of Penn Dodson.

A number of the entries that had been logged by various staff members have been voluntarily marked "unbillable" where counsel believes doing so is appropriate, such as for "purely" administrative tasks (even though even those do assist with the prosecution of the case). Also, for example, attorney time is logged at a significantly reduced rate ($200 vs. $450) for local travel for a court appearance. See time logs, 11/9/22 entry.

### E. Reasonable Rates; Customary Fee for Like Work

Here, the firm has invested more than 200 hours of efforts to this case, but much of that time has been by paralegals (whose hourly rates are less than half of those of the attorneys').

Requested rates are $450 for the lead partner on the case, $475 for the other partner who deposed the defendant and participated in limited high-level roles, $95-195 for paralegal work depending on the nature of the work and level of experience of the paralegal, $95 per hour for client relations specialist and intake management type work. Decl. of Dodson ¶ 13 . These rates are reasonable in this context.

Attorney Penn Dodson's rate is stated to be $450 per hour. As a partner who has been practicing law for more than 20 years with the credentials set forth in her attached Declaration,

AndersonDodson, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

*Coker v. Goldberg & Associates et al*
Case No. 1:21-cv-1803-JLR-BCM

P's Motion for Attorney Fees
Page 13

this is a reasonable rate. By order dated March 8, 2023, EDNY Judge Brian Cogan awarded full requested fees at our stated hourly rates, noting in part that "The services and particularly the internal intake and vetting procedures used by plaintiff's law firm were comprehensive in scope and exceed the level of due diligence often seen in these cases. Plaintiff's papers, including the instant motion, were of the highest quality." *Meehan v Brookliv,* Dkt. 39, Case No. 1:21-cv-02573-BMC (EDNY 3/8/2023). Similarly, in a highly contested case in a Colorado state court, the judge awarded the firm fees of over $120,000, representing full grant of the firm's attorney fees motion including the hourly rates requested in this motion. *Sigler v. PS Camping Inc*. (Fremont Co. Colo., 10/31/2022). In finding the claimed fees reasonable the judge noted that, "As indicated in counsel's abbreviated biographies, both counsel [Penn Dodson and her partner, Christopher Anderson] have indicia of above average experience and reputation and the level of experience and ability based was also observed by the Court in their work, both on paper and in the courtroom."

Especially since this case has been going on since November of 2020, Paralegal rates have varied a good bit in line with inflation and other market forces. At first $125 was the applicable rate for the lead paralegal assigned to the case. A former federal magistrate judge in Colorado expressly approved these three years prior to this rate being charged in this case. *Delgado v. Bohemian Ligers*, 1:16-cv-00397-KMT, Dkt. 28 *9 (D. Colo Jul. 28, 2017). In November 2021, the firm increased paralegal rates from $125 to $175, consistent with market forces, and went up again two years later in October of 2023, to $195, representing not only market forces but also increased experience level of the paralegals at issue. These too are consistent with rates typically awarded or approved in similar cases.

Though not typically considered, counsel also suggests that *average* billing rates across the case should be considered as a cross-check on reasonableness. In this case the billing logs show

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
*www.andersondodson.com*

*Coker v. Goldberg & Associates et al*
Case No. 1:21-cv-1803-JLR-BCM

P's Motion for Attorney Fees
Page 14

206.4 hours worked, for claimed overall amount of $53,667.00 (excluding voluntary reductions). Dividing the latter by the former yields an across-the-board effective average rate of $260.01 per hour. What this shows is that counsel consistently delegated tasks to staff members with lower hourly rates in order to achieve greater overall efficiency than would have been the case if they had done all of the tasks themselves. This combined rate is well within the reasonable range.

### F. Request for Fees and Costs In This Case; Interest

Plaintiff's counsel requests a fee of $53,667.00 plus litigation costs in the amount of $1,593.97

In order to pursue these claims, the firm incurred $1,593.97 worth of out-of-pocket costs, primarily for the court filing fee, service of process, a deposition transcript, and postage. Supporting documentation for these costs is attached.

Interest on both fees and costs is recoverable. *Wheeler v. John Deere Co*, 986 F.2d 413,415 (10th Cir. 1993); *MidAmerica Fed. Sav. Loan v. Shearson/Am. Express, Inc.*, 962 F.2d 1470, 1476 (10th Cir. 1992). While recognizing that there is a circuit split on the issue, at this time Plaintiff only asks that such interest only begin accruing from the date that the fees and costs are "meaningfully ascertained," i.e. from the date of this Court's Order on this motion. *Id.*; cf. *Copper Liquor, Inc. v. Adolph Coors Co*, 701 F.2d 542, 544 (5th Cir. 1983) (interest begins accruing when the right to the fees is set, which in this case was the date of the Summary Judgment Order, i.e. February 29, 2024.).

For all these reasons, an award of fees in the amount of $53,667.00 plus costs in the amount of $1,593.97, plus interest, is reasonable in this case, for this firm, for the efforts undertaken and results obtained.

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

*Coker v. Goldberg & Associates et al*
Case No. 1:21-cv-1803-JLR-BCM

P's Motion for Attorney Fees
Page 15

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

### III.  CONCLUSION

The Supreme Court has stated that

> … trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time. And appellate courts must give substantial deference to these determinations, in light of "the district court's superior understanding of the litigation." [ ] We can hardly think of a sphere of judicial decision making in which appellate micromanagement has less to recommend it.

*Fox v. Vice,* 131 S. Ct. 2205, 2216 (2011).

Under this standard and based on the foregoing analysis, Plaintiff's counsel requests a fee of $53,667.00 plus litigation costs in the amount of $1,593.97, for a total of $55,260.97 plus post-judgment interest on those amounts from February 29, 2024, in addition to the default judgment amount awarded. These amounts are squarely in line with awards of fees in other default cases of similar complexity and are warranted here as well.

Respectfully submitted, this **12th** day of **March, 2024.**

ANDERSONDODSON, P.C.

*/s/ Penn Dodson*

**Penn A. Dodson (PD2244)**
penn@andersondodson.com
11 Broadway, Suite 615
New York, NY  10004
(212) 961-7639

Attorney for Plaintiff