UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SADE COKER,**<br><br>               Plaintiff,<br><br>v.<br><br>**GOLDBERG & ASSOCIATES P.C.**, and<br>**JULIE GOLDBERG, ESQ.,** an individual,<br><br>               Defendants. | Case No. 1:21-cv-01803-JLR-BCM |

**DECLARATION OF PENN DODSON, ESQ.**
In Support of Motion Attorney Fees and Costs

1. I, Penn Dodson, am at least 18 years old, am competent to write this declaration, and am giving this declaration on the basis of personal knowledge of facts and circumstances stated herein.

2. I represent the Plaintiff(s) in the above-captioned action. I am familiar with the time I have personally devoted to it and have directed subordinates to expend on it.

### Background and Qualifications

3. **Admissions**. I am an attorney authorized and licensed to practice law in the states of Georgia (since 2003), New York (since 2009), and Colorado (since 2020). I am admitted to practice in the Tenth, Eleventh, and Second Circuits; Eastern and Southern Districts of New York; Middle and Northern Districts of Georgia; District of Colorado; and Georgia, Colorado, and New York state courts.

4. **Education**. After growing up in Arkansas, I went to Dartmouth College in New Hampshire. There, I received my BA, double major, *magna cum laude* with honors in the major, in 1997. My favorite college jobs were serving as a Teaching Assistant for Symbolic Logic (in philosophy, one of my majors) and as a writing tutor in the Writing Composition Center. A few years later I went to law school in California, and I received my JD in 2003 from Hastings College of the Law in San Francisco. There I was an assistant managing editor for the women's law journal and a volunteer at the Legal Aid Society's Employment Law Center.

5. **Law Practice**. I have been practicing in the field of employment law almost exclusively since receiving my bar license in 2003. Prior to and during law school, I also worked in

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY  10004
212.961.7639
www.andersondodson.com

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY  10004
212.961.7639
www.andersondodson.com

6. **Area of Focus**.  Although I have in times past handled other kinds of employment law cases, currently my focus is almost exclusively on wage and hour law, particularly the FLSA, Colorado Wage Acts, and New York Labor Law.  I have filed and managed dozens of wage and hour cases in the Eastern and Southern Districts of New York, District of Colorado, Middle and Northern Districts of Georgia, and state courts.  Many of these involved multiple plaintiffs and/or class/collective claims, but many are on behalf of individual or small groups of plaintiffs.

7. **Awards**.  I have been rated AV Preeminent® by Martindale-Hubble.  I have been named a Super Lawyer for the New York Metro region in the field of Employment Law, and also among The Top Women Attorneys in New York, each year from 2013 to the present.  On Avvo.com, my "Avvo Rating" is 10.0 (out of 10).  I have received a number of "endorsements" as an employment law practitioner from well-respected colleagues on LinkedIn.com and Avvo.com and have received positive reviews from clients as well on public websites such as Google, Avvo.com and Facebook.

8. **Organizations**. My peers elected me 2007 President of the National Employment Lawyers Association, Georgia Affiliate (NELA-GA), a state-wide plaintiff-side employment lawyers' organization.  I was a member of NELA-GA from 2004 through 2010 and was a board member of NELA-GA from 2005-2008.  I was a member of NELA-NY in 2010-11 and was a member of the national organization, NELA, from 2005 to 2011.  Through these organizations I chaired, presented in, and attended a number employment law Continuing Legal Education programs. In Colorado I have been a member of the Collaborating Attorney Network of the wage theft organization Towards Justice since approximately 2017.

9. **Significant Cases**.  In *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 117 (2d Cir. 2015) I argued for, and obtained, a change in Second Circuit law.  Bolstered by the amicus support I had sought out from the DOL, EEOC, and a handful of nonprofit organizations, I obtained an opinion overruling previous Second Circuit precedent that had held that in order to constitute a "filing" for the purpose of the FLSA's anti-retaliation provision, 29 U.S.C. § 215(a)(3), a complaint had to be formally made to a court of the DOL.  In *Greathouse* we established that oral, internal complaints (such as to a supervisor) can serve as protected activity. In *Fernandez v. Clean House*, No. 17-1230 (10th Cir. 2018) my firm achieved a reversal of a district court decision dismissing two of three of our clients' claims on the basis that they had left the Defendants' employ more than two (but less than three) years before the filing of the lawsuit. We successfully argued that argued the statute of limitations was an affirmative defense which they did not need to anticipate in their complaint by alleging willfulness, and, in any event, our allegations regarding Defendants' willfulness was adequate. My young associate Alex Gastman was primary on the appeal; I was on the brief and heavily participated in its completion.

10. **Client Feedback**.  Clients are frequently very kind in expressing their satisfaction with my representation, unsolicited.  Here are a few examples of excerpts of emails I have received:

"Thank you Ms. Dodson in demonstrating to me that you are both a master and exemplary practitioner[2] of the art of the law. Never before have I seen such dedication and excellence of service. I thank you and wish you luck in all your future endeavors."; "I just want to say that you have made me very comfortable with this entire process. That is no small feat. Thank you for that."; "And thank you Penn. I am really glad that I found you to represent us and was able to meet with you. I think I made the right decision."

11. **Previous Jobs**. After practicing employment law in Georgia for several years, I accepted a position with the law firm of Goldberg & Dohan from January 2010 until October 2012. In 2010, my responsibilities included opening a new office in New York for the Florida-based firm in an area of practice new to the firm and handling a new caseload "from scratch". In 2011, I had the additional responsibilities of overseeing the work of 1-2 attorneys and 2-4 support staff locally and, to a lesser degree, others out of state. While Goldberg & Dohan did not have formal titles for different experience levels for its attorneys, my responsibilities increased to those which I would equate to those of a junior partner.

12. **Current Role**. In late 2012, I founded my own law firm business, AndersonDodson, P.C., where I focus my practice on pursuing and recovering unpaid and underpaid wages to which employees are entitled, in Colorado, New York, and Georgia.

13. **Hourly Rates**. Most of my work I do on a contingency basis. For most cases the arrangement is that we are to receive the larger of a) 35% of the total recovery b) our hourly time as expended or c) a minimum fee of $3,000. As stated in our standard retainer agreements, my current hourly rate is $450. The other partner in this case bills at $475. In the firm in general we bill paralegal time at $95-$195 per hour. While most of my cases are contingency, I do perform some non-contingency work (e.g. employment contract reviews). For those services, I charge a flat fee or a hybrid fee (flat fee plus some percentage of a specified successful result). These are generally in the $500-$3,000 range usually. The least expensive offering I have is a very basic employment contract review, costing $500, usually involving 30-45 minutes of my time, and sometimes resulting in the client hiring me for additional work. I have created systems and automation around this offering to minimize the amount of time I have to expend on any one case, while still delivering a high-quality experience for the client at an affordable price.

**Other Team Members' Background and Qualifications**

14. **Christopher Anderson.** Mr. Anderson, partner, graduated from Cornell University and then went to the University of Georgia where he received JD and MPA degrees. He started practicing law in 1996 in the Bronx DA's office. His contributions to the case have primarily been in regard to deposing defendant Goldberg which is one of his strengths as an attorney. His roles in this case were limited to conducting a deposition and occasional high level strategy discussion.

15. **Maria-Vittoria ("Guigi") Carminati**. Dr. Carminati graduated from the University of Houston in 2005, Received her J.D. from its Law Center in 2008, and then received an LLM from the University of Nebraska-Lincoln in 2013, and also holds a JSD in space law.

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY  10004
212.961.7639
www.andersondodson.com

*Coker v. Goldberg & Associates*
Case No. 1:21-cv-1803-JLR-BCM (SDNY)

Atty Declaration in Support of Motion for Attorney's Fees
Page 3

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY  10004
212.961.7639
www.andersondodson.com

She is the author of three books and is a scuba diving instructor. She worked for the firm as an attorney from January 18, 2021 to December 17, 2021 and participated in this case by assisting with Plaintiff's response to Defendants' Motion to Dismiss.

16. **Frankie Brown**. Ms. Brown initially worked for AndersonDodson as a paralegal, from September 4, 2018 until July 31, 2020. During that time she obtained an associates degree, with honors, in Paralegal Studies from Athens Technical College, in December 2018. In May 2020, she graduated *summa cum laude* from Kennesaw State University with a Bachelor of Science in Sociology. She stopped working full time for the firm in the fall of 2020 in order to begin law school at the University of Georgia School of Law. As a 2L, she ranked eighth in her class out of 174 students. Apparently having too much time on her hands as a 3L, she decided to come back to work for the firm part time from November 10, 2021, until March 4, 2022.

17. **Jess Velez**. Ms. Velez received her paralegal certificate from the Community College of Denver in December 2016 and her B.A. in political science and social justice in May 2019 from the University of Colorado, Denver. Ms. Velez essentially replaced Ms. Brown, and now is supplemented by her. She is a valued member of our team. (They all are.)

18. **Jessica Balint.** Ms. Balint received her B.A. in both English and Art in May 2010 from the University at Albany in Albany, New York. She has been working as a Paralegal since March 2022, and began working for the firm January 2023.

19. **Lucy Espinal**. Ms. Espinal has been a paralegal for over twenty-five years, having received her paralegal certificate from the Academy of Medical Arts and Business in Harrisburg, Pennsylvania. She came to this firm after having about 17 years of experience in an employment firm in Pennsylvania. She has worked for this firm since June 5, 2023.

20. **Callyn Carter**. Ms. Carter graduated from the University of North Georgia in 2021 with a degree in Communication. She has been working for the firm since July 9, 2021 and her responsibilities have grown over the course of her tenure with the firm. For these purposes she essentially serves as a relief valve to assist the paralegals in various ways, performing junior paralegal duties.

21. **Lauren Pyles**. Ms. Pyles worked for the firm from August 3, 2020 to June 10, 2021 as a bilingual (Spanish/English) client relations specialist who also assisted with tasks to support the paralegals' work. Particularly memorable on her resume was her listing of "horse wrangling" as part of her background, which the partners at the firm felt could be a surprisingly useful translatable skill. She left the firm to enter law school.

**Efforts**

22. After receiving preliminary information about the Plaintiff and her claim, I directed that further information be obtained.

23. Next, a client relations specialist went through an extensive questionnaire with her to gather additional background information about the Plaintiff herself, the company, its owners, the

work performed, how time was kept, how she was paid, etc.

24. My staff also coordinated the logistics for collecting certain documents of the Plaintiff's related to her employment with the Defendants. At this point, I reviewed the information that had been gathered, analyzed it to determine the specific claims at issue and what further information was needed, and conducted background searches on the corporation and owners.

25. Then I had a lengthy conversation with the Plaintiff. I invited the Plaintiff to become a client and described the nature of the attorney-client relationship.  My paralegals then ensured that the signed retainer agreement and other internal paperwork was in order, and they set up both electronic and paper case files.  Attached is a copy of her initial legal services agreement.

26. Once the matter was open I attempted to correspond with the opposing parties by sending a demand letter explaining Plaintiff's claims. My firm did not receive a response, so I had my paralegals send out additional demand letters to various addresses. Attorney Goldberg did reply to this round via email, indicating her HR department would be reaching out to us. No one reached out, even though my legal team checked in with her several times to get a substantive response.

27. After my attempts to have a productive conversation with the Defendants and conferring with Plaintiff, I made the decision to file this complaint in federal court. Attached is a copy of the Plaintiff's new legal services agreement authorizing this move into formal proceedings. I drafted the complaint, oversaw the preparation of its accompanying documents and ECF filing, and supervised my staff to ensure that the complaint was served.

28. My firm hired a process server on March 8, 2021. On March 17, 2021 my office was notified that the Defendant Julie Goldberg was attempting to evade service.  First, my paralegal relayed that when the process server went to the front desk of Defendant Goldberg's office, the receptionist relayed to my team that the Defendant stayed in the back of the office and hid.  On March 31, 2024 the process server informed our team that receptionist refused to accept the service packet.

29. Eventually, an attorney did enter an appearance on behalf of Defendants. Dkt. 09.

30. Defendants filed a pre-motion letter requesting a pre-motion conference prior to filing a motion to dismiss and the court scheduled a phone conference on that pre-motion. Dkts. 10, 11.

31. The court then ordered mandatory mediation to take place.  Dkt. 12. Mediation was held, but unsuccessful. Dkt. 16 We then prepared and filed briefing schedule on Defendants' Motion to Dismiss which was approved by the court. Dkt. 18

32. Defendants filed their Motion to Dismiss along with a letter motion asking Plaintiff's counsel be enjoined from filing certain motions. Dkt. 21 We prepared and filed our

AndersonDodson, P.C.
11 Broadway
Suite 615
New York, NY  10004
212.961.7639
www.andersondodson.com

Coker v. Goldberg & Associates
Case No. 1:21-cv-1803-JLR-BCM (SDNY)

Atty Declaration in Support of Motion for Attorney's Fees
Page 5

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

response to their letter motion, asking the court to deny their attempt to focus on procedural gamesmanship, rather than the merits and substance of the issues. Dkt 22. The court denied the Defendants' letter motion. Dkt 23.

33. We prepared and filed our Response to Defendant's Motion to Dismiss. Dkt 24. We also filed prepared and filed a Rule 11 Motion for Sanctions on the Defendant's Motion to Dismiss. This included a Memorandum of Law and a "safe harbor" letter that was sent to defendants a month prior.  Dkt. 26.

34. The Court then denied our Motion for Sanctions without prejudice for failure to first request a pre-motion conference.  Acknowledging the procedural error I then prepared a letter and asking the court for a conference with an outline for the basis of my Rule 11 Motion. Dkt 30. A telephonic pre-motion conference was held on September 8, 2021 and it was decided that we would hold off on filing the motion for sanctions at that time [Minute Entry Dated 9/8/2021].

35. About six months later Judge Ramos denied Defendants' Motion to Dismiss. Dkt. 33.  The Defendants filed their Answer on April 21, 2022, more than a year after the Complaint was filed. A joint proposed case management plan was prepared, a scheduling order was issued, and discovery ensued. Dkt. 38.

36. We prepared and issued our discovery requests on July 7, 2022. After receiving insufficient discovery responses from the Defendants, we sent a "Meet and Confer" letter on August 31, 2022, asking for the Defendants to respond to our requests by September 9, 2022. My team followed up with the defendants' counsel several times in order to procure a response. Finally, on October 4th, opposing counsel responded that his client was "out of town" and could not respond until October 31st. Because of this we asked for an extension of time in order to conduct non-expert depositions. Dkt 40. Our request was granted and the parties were ordered to complete depositions by November 10, 2022 Dkt 42.

37. We also prepared and filed a Motion for Discovery Dispute Conference. Dkt 44. The Defendants were ordered to prepare and supplement their responses by October 28, 2022 Dkt 45.

38. Unfortunately, I had to prepare and file yet another discovery dispute letter Dkt 46. This time, three days before Defendants' scheduled depositions (November 7, 2022), the Defendants informed us that they had a conflict and could not attend the deposition. The parties were ordered to reschedule the depositions before December 12, 2022. Dkt. 52. My legal team made numerous attempts to schedule Defendant's deposition for many different dates, but the Defendants would not agree to any scheduled time.

39. During this time we also prepared and sent the Defendants our second set of interrogatories. During this time, my team also prepared for and attended Plaintiff's deposition which was held on December 6, 2022.  In order to prepare for this deposition my legal team communicated with client on the deposition and what to expect.

40. On November 11, 2022 the Defendants' counsel informed my legal team that the Defendant would be totally unavailable for a medical issue, thus unable to attend her own deposition. With the help of my legal team, I prepared and filed yet another letter to the court regarding depositions. Dkt 53. Giving the benefit of the doubt, the Court ordered that the Defendants' deposition would take place on February 6, 2023 (almost two years AFTER the case began). Dkt 58. My legal team then created new deposition notices, issued them to the Defendants through counsel, and rescheduled the depositions with the reporter.

41. Six days before the Defendants' deposition, the Defendants' filed another motion for extension of time to attend the depositions. Dkt 60. The Court ordered the depositions to take place on March 6, 2023. Dkt 61. My legal team then created new deposition notices, issued them to the Defendants through counsel, and rescheduled the depositions with the reporter.

42. The deposition was not rescheduled for a fourth time and did take place on March 6, 2023. Aside from the continuous scheduling and rescheduling of the depositions, it did take extensive work to prepare for the deposition. My partner, Christopher Anderson, who is a seasoned trial attorney, conducted this deposition.

43. To my dismay, I had to file another Motion for Discovery Dispute Conference .Dkt 62. This time, in regard to supplemental information and documents that the Defendant testified she had (largely because she did not prepare for the deposition at all, despite several months of notice). The court ordered for Defendants to turn over the discovery items by April 7, 2023. Dkt 65.

44. Next, my team prepared and filed a letter motion for conference in regard to Plaintiff's intent to file a motion for summary judgment. Dkt 66. The defendants objected; a conference was held remotely. The defendants were ordered to produce the remaining documents within three days, and the motion for summary judgment deadlines were set for shortly thereafter. Dkt 73.

45. Despite the fact the Defendants were granted another extension of time to produce their discovery documents, and despite our efforts to retrieve the remaining documents from the Defendants, I had to prepare and file a Motion for Sanctions Based on Discovery Deficiencies. Dkts. 75, 78. The Defendants requested another extension of time, this time to reply to our motion.  We prepared and filed a response in opposition. Dkt 82.

46. During this time my team prepared a lengthy Motion for Summary Judgement and it was filed in part on June 23, 2023 and in part of June 26 2023. Dkts 88-85. Defendants' counsel filed yet another motion for extension of time, this time, to respond the Plaintiff's Motion for Summary Judgment. Dkt 91. Our reply was prepared and filed on August 25, 2024. Dkt 95.

47. Five months later, the Defendants were ordered to produce their discovery documents. Dkt 102.  The Defendants filed another motion for extension of time to file their response Dkt 101], and then requested the court to stay the courts' order. Dkt 104.  Again, we prepared

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY  10004
212.961.7639
www.andersondodson.com

*Coker v. Goldberg & Associates*
Case No. 1:21-cv-1803-JLR-BCM (SDNY)

Atty Declaration in Support of Motion for Attorney's Fees
Page 7

and filed our response in opposition to the Defendants' continued efforts to delay the case Dkt 105.

48. The court granted our motion for summary judgment and judgment was entered in our favor. Dkt. 106. Dkt 107.

49. Along the way, my firm has also provided status updates, reviewed the file periodically to ensure it was progressing, and other similar routine tasks.

50. We also prepared this Motion and filing for Attorney's Fees and Costs [not included in time logged], and anticipate having to expend efforts in the future.

51. All of these efforts have been undertaken on a contingency basis, i.e. with no payments or income for these services rendered to date.

### Proposed Attorney Fees Here

52. **Attorney Fees Thus Far**. For efforts undertaken to date, we request an award fees of $53,754.50 and costs of $1,593.97 for a total of $55,348.47 plus post-judgment interest on those amounts in addition to the judgment amount awarded.

53. **Reasonable Rates**. The above proposed rates are reasonable for this work.

I solemnly declare that the foregoing is true and correct to the best of my knowledge, under penalty of perjury.

DATE:  March 12, 2024.

ANDERSONDODSON, P.C.

 s/ Penn Dodson
**Penn A. Dodson**
penn@andersondodson.com
(212) 961-7639

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY  10004
212.961.7639
www.andersondodson.com

*Coker v. Goldberg & Associates*
Case No. 1:21-cv-1803-JLR-BCM (SDNY)

Atty Declaration in Support of Motion for Attorney's Fees
Page 8